# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

GREGORY HOLT, ADC # 129616                                                                    PLAINTIFF
a/k/a ABDUL MAALIK MUHAMMAD

v.                                             5:11-cv-00164-BSM-JJV

RAY HOBBS, Director, Arkansas
Department of Correction; *et al.*                                                            DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

    1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**DISPOSITION**

**I. INTRODUCTION**

Gregory Holt, also known as Abdul Maalik Muhammad, filed a *pro se* Complaint (Doc. No. 2) pursuant to 42 U.S.C. § 1983, alleging that the Arkansas Department of Correction (ADC) grooming policy violates his constitutional rights and the Religious Land Use and Institutionalized Persons Act (RLUIPA).[1] Mr. Muhammad is a Salafi Muslim who

---

[1] The Religious Land Use and Institutionalized Persons Act (RLUIPA), which will be discussed further in Section IV, provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

seeks to grow a beard in observance of his religion but in contravention to the ADC grooming policy. (Doc. No. 2.)

The undersigned magistrate judge previously recommended denial (Doc. No. 7) of Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. No. 3) in light of the holding in *Fegans v. Norris*, 537 F.3d 897 (8th Cir. 2008) (Melloy, J., dissenting). Presiding District Judge Brian S. Miller, however, rejected those findings, granted Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order, and remanded the matter to the undersigned to hold a hearing.

On January 4, 2012, the Court held a hearing on the Motion for Preliminary Injunction and Temporary Restraining Order. After hearing testimony of two ADC officials concerning the specific rationale for the ADC grooming policy, this Court finds that the principles in *Fegans* apply and respectfully recommends that the Order granting Plaintiff's Motion (Doc. No. 28) be vacated and Plaintiff's Motion (Doc. No. 3) be DENIED. Furthermore, because one of the factors the Court considered in adjudication of Plaintiff's Motion was "the probability that the movant will succeed on the merits," this Court also finds that Mr. Muhammad's Complaint (Doc. No. 2) should be DISMISSED for failure to state a claim upon which relief may be granted.

## II.   FACTS

The ADC's grooming policy states:

> B.    Inmates' hair must be worn loose, clean, and neatly combed. No extreme styles are permitted, including but not limited to corn rows, braids, dread locks, Mohawks, etc. The hair of male inmates must be cut so as to be above the ear, with sideburns no lower than the middle

>   of the ear lobe and no longer in the back than the middle of the nape of the neck. Female inmates may wear their hair no longer than shoulder length.
>
>   . . .
>
>   D.   No inmates will be permitted to wear facial hair other than a neatly trimmed mustache that does not extend beyond the corner of the mouth or over the lip. Medical staff may prescribe that inmates with a diagnosed dermatological problem may wear facial hair no longer than one quarter of an inch. Inmates must present MSF 207 upon demand.

Administrative Directive 98-04 ("AD 98-04"). The purpose of the policy is "to provide for the health and hygiene of incarcerated offenders, and to maintain a standard appearance throughout the period of incarceration, minimizing opportunities for disguise and for transport of contraband and weapons." (*Id.*) An inmate's failure to comply with the grooming policy is grounds for disciplinary action. (*Id.*)

Mr. Muhammad offered a compromise and requested permission to maintain a one-half-inch beard in observance of his religion. Defendants rejected Mr. Muhammad's offer and argued that the grooming policy is necessary to alleviate security concerns.

## III.   PRELIMINARY INJUNCTION

### A.   Standard

In deciding whether to grant injunctive relief, the Court must consider the following factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between the harm and the injury that granting the injunction will inflict on the other party litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). No single factor is dispositive, but the movant must establish a threat of irreparable harm. *Id.*

Without a finding of irreparable injury, a preliminary injunction should not be issued. *Randolph v. Rogers*, 170 F.3d 850, 856 (8th Cir. 1999). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Goff v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995). The court in *Goff* also addressed the district court's role in inmate applications for injunctive relief as follows: "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration'...[t]he courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id.* (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).

### B. Analysis

As stated above, no single factor is dispositive; however, in this instance the two most important factors are whether Mr. Muhammad will suffer irreparable harm and the probability that he will succeed on the merits. During the hearing, Mr. Muhammad acknowledged that not all Muslims believe a man must maintain a beard. He also testified that followers of his faith get credit for attempting to follow the religious tenets. In light of Mr. Muhammad's hearing testimony, the Court finds that he will not suffer irreparable harm if forced to shave his beard in compliance with the ADC grooming policy.

Upon evaluating the balance between the harm to Mr. Muhammad and the injury that granting the injunction/temporary restraining order will cause the ADC, the Court finds that potential harm to the ADC outweighs any injury to Mr. Muhammad. During the hearing

ADC officials expressed concerns regarding safety and security. Warden Gaylon Lay, Cummins Unit, testified that if an inmate was allowed to maintain a beard, the inmate could change his appearance during an escape. He posed the questions of how does one consistently determine on a day-to-day basis whether an inmate's beard is one-half-inch long and what if the inmate disagreed with the assessment of his beard.

Warden Lay also expressed concern about beards being used as a means to facilitate the introduction of contraband into the inmate population. According to Warden Lay, a one-half-inch beard can conceal razor blades, drugs and homemade darts. He also expressed concern for the effect that giving one inmate preferential treatment would have on other inmates. He suggested that inmate could become a target of his fellow inmates.

The most compelling testimony came from ADC Assistant Director Grant Harris. He also explained that the mission of the ADC's grooming policy is to prevent the introduction of weapons and contraband into the prisons and that inmate facial hair poses a security risk. According to Harris, a needle from a syringe could be concealed in an inmate's beard. He was concerned that the officers charged with inspecting the inmates' beards might be wounded by needles or broken razors. He also echoed Warden Lays' concerns about giving an inmate preferential treatment. He stated that affording an inmate preferential treatment would either make the inmate a target or perhaps elevate the inmate's status to that of a leader.

Mr. Harris further testified that an emerging threat to security at the ADC was cellular telephones. The ADC telephone system helps minimize risk because it records all inmate

calls with the exception of legal calls. But inmates try to circumvent the phone system by smuggling in cell telephones piece by piece and reassembling them. He stated that a cell phone could be used to facilitate the introduction of drugs and weapons into the inmate population. During his testimony, Mr. Harris produced a ⅜″ x ⅜″ subscriber identify module (SIM) card from a cell phone. He explained that the SIM card was the critical piece to the cell telephone and, due to its size, a SIM card could be easily concealed in an inmate's beard.

Although Plaintiff makes compelling arguments that an inmate could easily hide contraband in many places other than a one-half-inch beard, the prison officials are entitled to deference. *Gladson v. Iowa Dep't of Corrs.*, 551 F.3d 825, 831-32 (8th Cir. 2009.) And the safety and security concerns advanced by the ADC officials are reasonable – particularly the fact that an escaping inmate could quickly change his appearance by shaving off his beard. Regardless, the concerns expressed by the ADC officials are nearly identical to those embraced by the majority in *Fegans,* 537 F.3d 897.

During the bench trial in *Fegans*, former ADC Director Larry Norris expressed concern regarding the safety and security of inmates and staff. *Id.* at 906. He explained that the ADC prohibition on inmate facial hair "keeps [inmates] from being able to change their appearance," and made it easier for law enforcement officials to track and identify an inmate following an escape. *Id.* at 906. He also said that "an uncut beard would make identification more difficult and would facilitate the smuggling of contraband. An uncut beard creates a better disguise for an escapee than a quarter-inch beard, because it conceals the contours of

an inmate's face." *Fegans*, 537 F.3d at 907. The *Fegans* majority agreed that the ADC had a legitimate penological interest in prohibiting inmates from wearing uncut beards and that the prohibition was the least restrictive means available in furthering that interest. *Id.* at 907.

Mr. Muhammad urges the Court to disregard *Fegans* and instead follow the *Mayweathers v. Terhune* case from the Ninth Circuit. *Mayweathers v. Terhune*, 328 F. Supp. 2d 1086 (E.D. Cal. 2004). The Court, however, is mindful of the fact that it is bound by Eighth Circuit precedent. *See Hood v. U.S.*, 342 F.3d 861, 864 (8th Cir. 2003). Because the testimony in the present case is similar to that offered in *Fegans,* the Court finds that Plaintiff has little likelihood of success on the merits.

The public interest in this matter is negligible and does not favor either party. In sum, upon considering the four factors, the Court finds that Mr. Muhammad will not suffer any irreparable harm, the balance the harm and the injury to ADC weighs in favor of the ADC, and based on Eighth Circuit precedent there is little likelihood that Mr. Muhammad will succeed on the merits. The Court, therefore, finds that Mr. Muhammed's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. No. 3) should be DENIED.

**IV.   SCREENING**

The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). According to 28 U.S.C. § 1915(e)(2)(B) the court may dismiss a prisoner case at any time if the court determines that the prisoner's complaint is either frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant

who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Here, the Court has convened a hearing and has considered Mr. Muhammad's testimony during the hearing to be true, drawn appropriate inferences in his favor, and refrained from making any credibility determinations.  In considering "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986), the Court finds dismissal is appropriate in this case as a matter of law.

**A.     Standard**

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  In reviewing a *pro se* complaint under § 1915(e)(2)(B), the court must give the complaint the benefit of a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The court must also weight all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  But regardless of whether a plaintiff is represented or appearing *pro se*, his

"complaint must contain specific facts supporting its conclusions." *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *See id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility" of entitlement to relief. *Id*. at 557.

### B. The Free Exercise Clause and RLUIPA

"It is well settled that a prison inmate retains those constitutional rights that are not inconsistent with his status as a prisoner or the legitimate penological objectives of the corrections system." *Turner v. Safley*, 482 U.S. 78, 95 (1987) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)) (internal quotations omitted). The evaluation of penological objectives in this context is "committed to the considered judgment of prison administrators." *O'Lone v Shabazz*, 482 U.S. 342, 349 (1987); *Fegans*, 537 F.3d at 902. To ensure that courts afford appropriate deference to those judgments, courts review prison regulations alleged to infringe on constitutional rights under a "reasonableness test" that is less restrictive than ordinarily applied to alleged infringements of fundamental rights. *O'Lone*, 482 U.S. at 349; *Fegans*, 537 F.3d at 902.

A prison regulation or action is valid, even if it restricts a prisoner's constitutional rights, if it is "reasonably related to legitimate penological interest." *Gladson*, 551 F.3d at

832 (quoting *Turner,* 482 U.S. at 89). When determining whether a prison regulation or action is reasonably related to legitimate penological interests, the court considers the following factors: (1) whether there is a valid rational connection between the prison regulation and the government interest in justifying it; (2) whether there is an alternative means of exercising the right that remains open to prison inmates; (3) whether the accommodation will have a significant "ripple effect" on guards and other inmates and on the allocation of prison resources; and (4) whether there is an alternative that fully accommodates the prisoner at de minimis cost to valid penological interest. *Turner*, 482 U.S. at 90; *Gladson*, 551 F.3d at 831.

In 2000, Congress enacted RLUIPA to provide additional protection for institutionalized persons' religious freedom. *Singson v. Norris*, 553 F.3d 660, 662 (8th Cir. 2009); *Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 987 (8th Cir. 2004). RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. RLUIPA "defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious beliefs.'" *Van Wyhe v. Reisch*, 581 F.3d 639, 655-56 (8th Cir. 2009) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005)). RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion. *Gladson*, 551 F.3d at 832.

A prisoner's claim under RLUIPA is, instead, evaluated under a compelling interest standard. *Cutter*, 544 U.S. at 722; *Gladson*, 551 F.3d at 832; *Patel v. U. S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). The United States Supreme Court has remarked that "context matters" in the application of this "compelling government interest" standard, and that RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722; *Fegans*, 537 F.3d at 902. While the government must meet a higher burden than the rational relationship test applied in constitutional cases, the court still affords a significant amount of deference to the expertise of prison officials in evaluating whether they met that burden. *Gladson*, 551 F.3d at 832.

When faced with both a Free Exercise Claim and a RLUIPA claim, a court must as a threshold matter, inquire as to whether the prison has placed a "substantial burden" on the prisoner's ability to practice his religion. *Van Wyhe*, 581 F.3d at 655; *Gladson*, 551 F.3d at 833; *Patel*, 515 F.3d at 813. If the court determines that a regulation imposes a substantial burden on a prisoner, the Court will then review the burden under reasonableness and compelling interest standards. *See Gladson*, 551 F.3d at 833; *Patel*, 515 F.3d at 813. To constitute a substantial burden, the policy or regulation

> ...must significantly inhibit or constrain conduct or expression that manifest some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Van Wyhe*, 581 F.3d at 656; *Gladson*, 551 F.3d at 833; *Patel*, 515 F.3d at 813. When the

significance of a religious belief is not at issue, the same definition of "substantial burden" applies under the Free Exercise Clause and RLUIPA.[2] *Gladson*, 551 F.3d at 832; *Patel*, 515 F.3d at 813. If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the *Turner* test to the Free Exercise Claim and the strict scrutiny test to the RLUIPA claim. *Gladson*, 551 F.3d at 833.

### C. Analysis

As discussed earlier in this disposition, the Defendants expressed numerous safety and security concerns during the January 4, 2012, hearing regarding why the ADC grooming policy prohibits inmates from maintaining facial hair. Prison safety and security are compelling government interests. *Singson*, 553 F.3d at 662. Mr. Muhammad acknowledges that the Defendants have a legitimate penological interest in maintaining the grooming policy. However, he argues that the ADC prohibition on facial hair is not the least restrictive means available to address those interests.

Mr. Muhammad points out that ADC grants a medical exemption to inmates with certain dermatological conditions, which allows for a one-quarter-inch beard. Mr. Muhammad seeks a one-half-inch beard. And Mr. Muhammad does not assert "that the medical exemption would satisfy his religious beliefs." *See Fegans*, 537 F.3d 906.

---

[2] It has been recognized that portions of the definition of "substantial burden" requiring religious beliefs to be a "central tenet" or "fundamental" may not apply to a RLUIPA claim. *Gladson*, 551 F.3d at 832-33. In the instant case, Defendants do not challenge the sincerity of Mr. Muhammad's beliefs.

Mr. Muhammad also suggests that Defendants could follow the same procedures used by the New York Department of Correction, where a photo is taken of inmates with and without facial hair. When questioned about the harm in following the procedures used in New York, Warden Lay replied that an inmate might enter the ADC with a beard and maintain said beard until he escapes. He said, conversely, an inmate might also enter the ADC clean shaven only to grow a beard upon escape. "Although prison policies from other jurisdictions provide some evidence as to the feasibility of implementing a less restrictive means of achieving prison safety and security, it does not outweigh the deference owed to the expert judgment of prison officials who are infinitely more familiar with their own institutions than outside observers." *Fegans*, 537 F.3d at 905 (quoting *Hamilton v. Schriro*, 74 F.3d 1545, 1556 n. 15 (8th Cir. 1996)).

In considering the pleadings and testimony in this matter, the Court finds that the ADC demonstrated a compelling penological interest in prohibiting Mr. Muhammad from maintaining a one-half-inch beard, and that this prohibition was the least restrictive means available in furthering that interest. The Court further finds that Mr. Muhammad's ability to practice his religion has not been substantially burdened. During the hearing he testified that he had been provided a prayer rug and a list of distributors of Islamic material, he was allowed to correspond with a religious advisor, and was allowed to maintain the required diet and observe religious holidays.

Upon giving Mr. Muhammad full credit for his testimony, the Court finds that his claims fail as a matter of law. His Complaint (Doc. No. 2) should, therefore, be dismissed,

pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. The Court's Order (Doc. No. 28) granting Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order should be VACATED.

2. Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. No. 3) should be DENIED.

3. Plaintiff's Complaint (Doc. No. 2) should be DISMISSED with prejudice for failure to state a claim on which relief may be granted.

4. Dismissal of this action constitutes a "strike" for purposes of 28 U.S.C. § 1915(g).[3]

5. All pending motions should be DENIED as moot.

DATED this 27th day of January, 2012.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[3] The PLRA provides: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. . . ."